UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIAH DANIELS, | No. C 04-5123 MHP (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| A. P. KANE, warden, | |
| Respondent. | |

## INTRODUCTION

Isiah Daniels, an inmate at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

The facts of the criminal episode that led to Daniels' conviction in the Marin County Superior Court are not necessary for the evaluation of his petition and therefore are only briefly summarized here: Susan H. was a small woman who had juvenile rheumatoid arthritis that caused limitations on her abilities to walk and move her elbows and hands. At about 7:00 p.m. on February 21, 1996, when Susan H. had parked in a grocery store parking lot and was preparing to get out of the car, Daniels "pushed her into her car, forced her to drive to some places for purposes of trying to take money from her and then . . . drove or directed driving to a place where it was his announced intention to kill her so that she couldn't identify him, and then at that place over a substantial period of time, he abused her

physically, including sexual touching, and at one point placing the strap of her purse around her neck and pulling on it, whether it was his full intention to kill her at that point or not." 1/24/97 RT 69.

On the day his trial was to commence, Daniels pled guilty pursuant to a plea bargain. He was convicted of kidnapping for the purpose of robbery and assault with the intent to commit penetration with a foreign object and/or robbery. On January 24, 1997, he was sentenced to six years on the assault count, followed by a consecutive term of life with the possibility of parole on the kidnapping count. (The sentence had additional components, but those are not relevant to the habeas claim.) His conviction was affirmed on appeal.

Daniels later unsuccessfully urged in state court collateral proceedings that there had been a breach of the plea agreement. His petition for writ of error coram nobis was denied by the Marin County Superior Court in July 2004. His petition for writ of error coram vobis was denied by the California Court of Appeal in August 2004. His petition for review was denied by the California Supreme Court in October 2004.

Daniels then filed his federal petition for writ of habeas corpus. He alleged that he was entitled to enforcement of the terms of the plea agreement. The court dismissed the petition with leave to amend because Daniels had not identified the term(s) of the plea agreement that had been breached. Daniels then filed an amendment to his petition, in which he indicated that the state breached a plea agreement term that he was to be eligible for parole not more than 9 years after sentencing and have a parole date set. See Amendment To Petition, p. 2 (plea agreement included a provision that he would be "eligible for parole in 7, 8 or 9 years from sentencing date depending on accumulated credit and having a parole date set"); id. at 3 (state breached "by not taking petitioner to his Board of Prison Term Hearing and having a parole date set as instructed by the courts under the terms of his plea agreement"). After an unsuccessful motion to dismiss the petition as untimely, respondent filed an answer. Petitioner filed a traverse. The matter is now ready for a decision on the merits of the petition.

2

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Marin County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's

3

decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

When the state court gives no reasoned explanation of its decision on a petitioner's federal claim, the federal court will conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). That is the case here. The only non-summary decision from a state court was the California Court of Appeal's decision on direct appeal after defense counsel had filed a brief pursuant to People v. Wende, 25 Cal.3d 436 (Cal. 1979), which by its very nature raised no legal issues on appeal. Resp. Exhs. 3 and 4. Daniels did not assert his breach of plea agreement claim until he filed his collateral petitions in state court, and those petitions were denied summarily. See Resp. Exhs. 6-8. An independent review of the record therefore is necessary.

## DISCUSSION

Daniels asserted in his habeas petition that the state has breached his plea agreement by not setting a parole date no more than nine years into his sentence. His claim turns on whether a statement made by the sentencing judge about the way a life sentence for kidnapping worked became a term of the agreement.

A.   The Plea Proceedings And Sentencing

On July 30, 1996, Daniels signed and initialed a "plea of guilty" form that had been marked to reflect the particulars in his case. CT 171-172. The form stated that he had been charged with violations of California Penal Code §§ "664/187(a), 209.5(a), 209.5(b). 289(a), 220, 211, 236, 243.4(a)." CT 171. The form further stated that Daniels desired to plead

4

guilty to Count 3 (Cal. Penal Code § 209(b)) and Count 5 (Cal. Penal Code § 220).  The form stated this regarding the sentence exposure: "My attorney has explained the possible sentence and sanctions which could be imposed as a result of my plea of guilty.  I understand that as a result of my plea of guilty, I may be sentenced and sanctioned as follows: if sent to state prison on Count 3, a life sentence will be imposed.  If sent to state prison on Count 5, up to 6 years state prison consecutive to Count 3, could be imposed."  CT 171.

At the change of plea hearing that same day, Daniels agreed that he had signed and initialed the form and that there were no other promises or threats causing him to enter the plea.  7/30/96 RT 1.  The following was stated about the possible sentence:

> THE COURT: Now if you are convicted of these two charges – apparently it is Count III and Count V that are contemplated. [¶] If you plead guilty, you almost certainly will be convicted.  You are looking at the possibility on Count III of a life sentence if you are sent to prison.
>
> [PUBLIC DEFENDER] MS. O'CONNOR: That is with the possibility of parole, and on Count V, it would be up to six years in state prison consecutive to Count III if you are sent to state prison on that. [¶] Do you understand that?
>
> THE DEFENDANT: Yes.

Id. at 4.  Nothing further was mentioned at the plea colloquy with regard to the length of the sentence or what a life sentence meant.   Daniels pled guilty to both charges.  Id. at 11-12. Sentencing was then set for a later date.  Id. at 13.  There was no mention that the guilty plea was in any way contingent on what occurred at the sentencing hearing.

The sentencing hearing took place on January 24, 1997.  At the hearing, the court heard testimony and argument about the impact of the crime on the victim and the availability of a halfway house that could accommodate Daniels if he was put on probation. The court rejected probation and a rehabilitation program as inappropriate under the circumstances of the case.  1/24/97 RT 67.  The court then made what appears to be an effort to make the sentence imposed more palatable to Daniels.  Id. at 68-70.

> [THE COURT:]  This was a horrible, horrible incident.  I don't have the slightest doubt as he sits here right now Mr. Daniels regrets it and wishes it didn't happen.
>
> And, Mr. Daniels, I think you probably are a strong enough person.  You've already demonstrated that.  You can get this behind you.   You can get through a

5

period of incarceration.

> *The public needs to understand that the life sentence involved in the kidnap charge is not really a life sentence. If you look at the way the law works, it's basically a seven-year sentence followed by the possibility of parole and that's the way the law works.*
>
> So to announce publicly that that's a life sentence is a distortion and a deception, unless you accompany that representation publicly with the rest of the information that that's the way the law works.

Id. at 68.  The court again mentioned that probation was not the right punishment for Daniels' criminal conduct, and noted that Daniels had benefitted from the plea bargain by avoiding the prospect of life imprisonment without any possibility of parole. Id. at 70. The court sentenced Daniels:

> As to Count V, the allegation of assault with intent to commit digital penetration, the Court finds, after considering all of the factors, that it is in fact an aggravated offense and will sentence and does sentence the defendant to state prison for a period of six years.
>
> And as to Count III, the defendant is committed to [state] prison for a term of life to be served consecutively to the sentence in Count V.
>
> *Following any period in state prison, Mr. Daniels, you'll be placed on parole probably, and I don't know exactly what the numbers are, but probably you'll become eligible for parole, if the truth be known, in something approximating seven, eight or nine years from now, depending on the credits you've accumulated so far here.*

Id. at 71.

Respondent stated in his answer that Daniels began serving his six-year determinate sentence on January 31, 1997 and began serving his life sentence on January 8, 2001. Daniels received a parole documentation hearing on January 12, 2004.  He also was scheduled to receive an initial parole consideration hearing in December 2006, although that did not happen as scheduled because the board did not have a psychological report.  (Docket # 26.)  The psychological report was completed on January 17, 2007.  See id.  Daniels also was scheduled to have a minimum eligible parole date hearing on January 12, 2008 – seven years after he began serving his life sentence.

/ / /

/ / /

/ / /

6

B.   The Law On Plea Agreements

When a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Under Santobello, the defendant has a due process right to enforce the terms of his plea agreement. Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006) (en banc), cert. denied, 75 U.S.L.W. 3001, 3023 (2007). Santobello provides clearly established federal law for habeas purposes under 28 U.S.C. § 2254(d). Buckley, 441 F.3d at 694.

Plea agreements are subject to contract law standards of interpretation. See United States v. Kamer, 781 F.2d 1380, 1387 (9th Cir.), cert. denied, 479 U.S. 819 (1986). Because Daniels' plea agreement was made in California, the court applies California's state contract law, which was outlined as a 3-step process in Buckley.

> A court must first look to the plain meaning of the agreement's language. Cal. Civ. Code §§ 1638, 1644. If the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal. Civ. Code § 1649. The inquiry considers not the subjective belief of the promisor but, rather, the "objectively reasonable" expectation of the promisee. . . . Courts look to the "objective manifestations of the parties' intent. . . . If after this second inquiry the ambiguity remains, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

Buckley, 441 F.3d at 695-96.

C.   Analysis

The first italicized statement the judge made at sentencing was not legally incorrect. He said: "The public needs to understand that the life sentence involved in the kidnap charge is not really a life sentence. If you look at the way the law works, it's basically a seven-year sentence followed by the possibility of parole and that's the way the law works." 1/24/97 RT 68. As the judge said, the life sentence was basically life and parole was a possibility after seven years of it. The comment reflects that parole is possible seven years after the life sentence started rather than seven years after the sentencing hearing. This statement would not cause a problem even if it was considered part of the plea agreement.

7

The second italicized statement the judge made at sentencing is more troubling because it was incorrect. The judge stated: "Following any period in state prison, Mr. Daniels, you'll be placed on parole probably, and I don't know exactly what the numbers are, but probably you'll become eligible for parole, if the truth be known, in something approximating seven, eight or nine years from now, depending on the credits you've accumulated so far here." Id. at 71. The judge was wrong on the law when he stated that Daniels probably would become eligible for parole 7-9 years after the sentencing hearing because the time when parole becomes a possibility runs from the start of the sentence rather than the date the sentence was imposed.

Although the judge made a mistake, Daniels' breach of plea agreement claim fails because the judge's statement at the sentencing hearing was not a term of the plea agreement. A plea agreement is between the prosecutor and defendant, subject to the court's acceptance of the plea. See Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003). That a plea agreement is subject to the court's acceptance of the plea does not mean that the court's comments become part of the bargain or become one of the terms. This follows from the fact that a prosecutor can breach a plea agreement by making an argument at sentencing inconsistent with the terms of the plea agreement, which would not be possible if the court's statements became the terms of the agreement. See, e.g., United States v. Mondragon, 228 F.3d 978, 980-81 (9th Cir. 2000) (prosecutor breached plea agreement by calling sentencing court's attention to allegedly serious nature of prior offenses after promising not to make recommendations regarding sentence); United States v. Arnett, 628 F.2d 1162 (9th Cir. 1979) (remanding for factual development on whether prosecutor breached plea agreement by opposing defendant's motion for a reduction of the sentence after having promised to take no position as to the appropriate sentence). If the court's statements are considered a term of the agreement, there could not be a breach when the court sentences a defendant to a term other than that agreed upon by the prosecutor and defendant. And if the court's statements are considered a term of the agreement, the defendant would have no recourse when the sentence went unexpectedly badly for him, but surely Daniels would not concede that the

8

judge's statement was the term of the agreement if the judge had sentenced him to life without parole.

      Daniels' argument that the judge's comment was a term of the agreement also runs into a timing problem. The plea agreement was "accepted and final only at the moment that the judge made the requisite factual findings and accepted the plea." Brown, 337 F.3d 1155, 1159 (9th Cir. 2003). Here, the judge made the incorrect statement at the sentencing hearing in January 1997, four months after everything else, i.e., four months after Daniels and the prosecutor had reached their agreement, Daniels had represented that there were no promises other than those in the written agreement, Daniels had entered his guilty plea, Daniels had agreed with the judge's observation that he could go to prison for the rest of his life, and the court had accepted Daniels' guilty plea. Daniels' suggestion that he detrimentally relied on or was induced by the court's statement defies common sense because the statement was not made until four months after Daniels acted. See Traverse, p. 4 & n.3. In contract terms, the court's statement at sentencing was not a term of the plea agreement because the court was not a promisor or promisee in the agreement made four months earlier.

      Applying California contract law to determine the terms of the plea agreement, the first step is to look at the plain meaning of the agreement's language. Daniels agreed that the only promises were those in the written form. The form stated that Daniels desired to plead guilty to Count 3 and Count 5, and that "if sent to state prison on Count 3, a <u>life sentence will be imposed</u>. If sent to state prison on Count 5, up to 6 years state prison <u>consecutive</u> to Count 3, could be imposed." CT 171 (emphasis added). The form makes no mention of the time-frame for the consideration of parole on the life sentence and does not even mention the possibility of parole. The term "consecutive" is unambiguous and has a plain meaning of "[s]uccessfully following without interruption: continuous." Webster's II New Riverside University Dictionary 300 (1994). The term "life sentence" also is unambiguous and in criminal law has a plain meaning of imprisonment for the rest of one's life. The analysis ends at the first step under California law because there is not an ambiguity in the contract.

9

1     Even if the term "life sentence" was considered ambiguous in failing to specify
2  whether it was with or without the possibility of parole, and therefore required one to
3  proceed to the second step of a contract analysis under California law, the objective
4  manifestations of the parties' intent at the plea colloquy resolve any ambiguity.  The
5  statements at the plea colloquy provided evidence of how the promisee (Daniels) understood
6  it.  When the court told Daniels, "You are looking at the possibility on Count III of a life
7  sentence if you are sent to prison," his attorney interjected that it was "with the possibility of
8  parole" and would run consecutive to the six years on the assault count.  Daniels then stated
9  he understood that.  As a result, the term "life sentence" in the written form agreement was
10 ambiguous, the parties' mutual intent was objectively manifested at the plea colloquy by
11 Daniels' attorney's statement -- followed by Daniels' agreement and the prosecutor's silence
12 -- that the life sentence was with the possibility of parole.   There is zero evidence that the
13 promisor (i.e., the prosecutor) thought that the promisee (i.e., Daniels) understood "life
14 sentence" to mean eligible for parole 7-9 years after the date of sentencing.  There also is no
15 evidence that even Daniels or his attorney secretly thought he'd be out of prison in no more
16 than 9 years when he agreed to the deal or entered his plea.  The failure to specify the
17 number of years that had to be served before Daniels could be considered eligible for parole
18 does not mean that the term was ambiguous.

19     The court can look to counsel's argument at sentencing and the defendant's reaction at
20 sentencing as objective proof to determine the reasonable understanding and expectation of
21 the parties.  See United States v. Kamer, 781 F.2d 1380 (9th Cir.), cert. denied, 479 U.S. 819
22 (1986).  Doing so would not aid the analysis here because the parties' non-objections to the
23 judge's comments are themselves ambiguous in light of the different statements by the judge
24 that could be interpreted differently:  the sentencing judge said that a life sentence is
25 "basically a seven-year sentence followed by the possibility of parole," predicted "probably
26 [Daniels will] become eligible for parole" in 7-9 years, and then sentenced him to life
27 consecutive to the six year term.  With this range of statements, the parties' non-reactions do
28 not do much to explain their reasonable understanding and expectations of the agreement

10

entered four months earlier.

In sum, applying contract law principles, the parties' agreement was that Daniels would plead guilty to kidnapping and assault in exchange for a sentence of up to life imprisonment with the possibility of parole on the kidnapping count consecutive to a six year sentence on the assault count. The sentencing judge's statement that Daniels would probably be eligible for parole ""if truth be known, in something approximating seven, eight or nine years from now, depending on the credits [] accumulated so far'" was not a term of the plea agreement. Because that prediction was not part of the plea agreement, the state's failure to find Daniels eligible for parole nine years or less after the sentencing hearing did not breach the plea agreement. Having independently reviewed the record, the court concludes that the state court's rejection of Daniels breach of plea agreement claim was not contrary to or an unreasonable application of clearly established federal law as set forth by the U.S. Supreme Court. Daniels is not entitled to the writ on his claim.

Perhaps recognizing that his breach of plea agreement claim would not prevail, Daniels shifted his focus in his traverse and added argument that the judge failed to assure that he understood the consequences of his plea, including the possible duration of his imprisonment. Traverse, pp. 2-3. Daniels suggested that his plea was not knowing and voluntary. See id. at 3. A claim that a guilty plea is not knowing and voluntary is different from a claim that a plea agreement has been breached. One does not encompass the other and they often conflict; in the latter, the petitioner often asserts he agreed to a particular term while in the former, he often asserts that he didn't know what he was doing. Daniels did not challenge the knowing and voluntary nature of his guilty plea in the petition in this action and cannot raise it only in his traverse. Such a claim should be presented, if at all, in a separate habeas petition challenging his conviction, subject to various procedural rules such as the requirements that a federal petition be filed within the one-year limitations period and that state court remedies be exhausted before the claim may be asserted in a federal habeas petition. See 28 U.S.C. §§ 2244(d), 2254(b). The current petition does not seek to set aside the conviction or sentence imposed and would not preclude an actual challenge to the

11

conviction or sentence. In fact, the court earlier denied respondent's motion to dismiss using similar reasoning, viz., the breach of the plea agreement claim was not time-barred because it did not accrue at the time of sentencing and only accrued when the alleged plea agreement term was breached.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: May 2, 2007

Marilyn Hall Patel
United States District Judge